UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELVIN LEE,

                 Petitioner,          **DECISION AND ORDER**

     -vs-                              **No. 09-CV-6502(VEB)**

MICHAEL CULLY,

                 Respondent.

_____

## I.      Introduction

Petitioner *pro se* Melvin Lee ("Lee" or "Petitioner") has filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 challenging his detention in Respondent's custody as

the result of a judgment of conviction entered against him following a jury trial on charges of

robbery in the first degree (New York Penal Law ("P.L.") § 160.15(3)) and criminal possession

of a weapon (P.L. § 265.02(1)).

## II.     Factual Background and Procedural History

### A.     The Trial and Sentencing

On February 13, 2006, at approximately 6:30 p.m., Joel Kitchen ("Kitchen") entered his

pickup truck, which was parked in the driveway of his apartment, to go to the airport to pick up

his girlfriend. T.311-314 (Numerals preceded by "T." refer to the pages of the trial transcript). As

Kitchen backed his truck to the edge of the driveway, he heard a loud banging on the passenger

side window. T.314.  It was Lee. According to Kitchen, Lee opened up the door and asked

Kitchen in an angry tone of voice if he "hated New Orleans niggers". T.315, 317.  Shocked,

Kitchen said, "excuse me?" Lee again queried, "Do you hate New Orleans niggers?" T. 316. Lee

then launched into an explanation of how he had moved to Western New York from New

Orleans and opined that his people were being treated unfairly here. T.316-17.

Pulling an eight-inch long kitchen knife from his jacket, Lee sat down in the passenger

seat of Kitchen's truck. T.318. Kitchen, who was  "pretty scared" by this point, "did not know

what to do." T.318. Lee then told Kitchen to drive. T.319.

Petitioner's next inquiry was how much money Kitchen had on him, and Kitchen

responded that he had forty dollars. T.319. Petitioner responded, "Well, that's not enough. I need

more money to support my family." T.319. Putting the knife back into his coat, Lee gave Kitchen

directions on where he wanted him to drive. T.319.

During the drive, Lee repeatedly talked about New Orleans, how people there were being

treated unfairly, and that all Americans were racists. T.321. Kitchen did not respond to Lee's

diatribe because he was scared about where he was being made to drive.  At one point during the

drive, Kitchen handed over the forty dollars to Lee. T.322. Kitchen testified that he did not hand

over the money willingly, but rather he did so because he was afraid his life was in danger if he

did not comply with petitioner's request. *Id.* Petitioner then told Kitchen that they need to find a

store with an ATM so Kitchen could withdraw more money from his bank account.  *Id.*

Kitchen pulled his truck into the driveway of the next store they passed. T.323.  Lee

stated, "I'm going to come in right behind you and don't try anything stupid." T.324. Kitchen

then walked into the store, with Lee about ten feet behind him.  *Id.* Kitchen went to an ATM

machine and withdrew sixty dollars, walked over to petitioner, and handed him the money saying

"this is all I have, I don't have anymore [sic] in my bank account." T.327. Kitchen then asked if it

was "ok to leave," and Petitioner responded, "Yeah, I'm going to follow you out." T.328. They

both left the store and then Kitchen got into his truck and drove away. Id.

Detective Christopher Dates ("Det. Dates") testified that, as a result of his investigation, he learned that Lee had never lived in New Orleans. T.421-422. Det. Dates also testified that the knife was not recovered over the course of the investigation. T.423-424.

The jury returned a verdict finding Petitioner guilty of both counts of the indictment. He was subsequently sentenced to a determinate term of ten years of incarceration for the robbery conviction, and an indeterminate term of incarceration of two to four years on the criminal possession of a weapon conviction. Both sentences were set to run concurrently.

### B.    The Direct Appeal

On direct appeal, Lee's appellate counsel raised several issues and Petitioner also submitted a supplemental *pro se* appellate brief in which he contended that his conviction was obtained in violation of the First Amendment of the United States Constitution.

On March 4, 2008 the Appellate Division, Fourth Department, affirmed the judgment of conviction. *People v. Melvin Lee*, 50 A.D.3d 1603 (App. Div. 4th Dept. 2008). The Court of Appeals denied leave to appeal on August 19, 2008. Petitioner sought reconsideration of the decision to deny leave to appeal but reconsideration was denied on October 22, 2008. His petition for a writ of *certiorari* to the United States Supreme Court was denied on June 8, 2009. Reconsideration denied on September 4, 2009.

While his petition for *certiorari* was pending in the Supreme Court, Lee filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, raising the following arguments: trial counsel was ineffective for not calling certain witnesses; the victim committed perjury; and the People failed to turn over Rosario material. The

motion was denied by the trial court on November 13, 2008.

     **C.**     **The Federal Habeas Proceeding**

This timely Federal habeas petition (Docket No. 1) followed. When asked to state Ground One (¶22(A) of the form petition (Docket No. 1)) for relief, Lee states as follows: "There where [sic] people who worked in the store and seen [sic] everything that happen [sic] that night." The remaining factual allegations in this section of his petition are confusing but seem to suggest that there were witnesses who had exculpatory information to give: "Mr. Frank Tobias a [sic] investigator I got. He gave an affidavit about Any [sic] King, the shirt [sic] manager, Mr. Larry Abrams store manager, and a Marie C. Bailey about what they knew." Lee goes on to mention that Mrs. Bailey has "pass [sic] away" but asserts that the police "knew" about these witnesses because it was "in [his] statement."

When asked to list Ground Two (¶22(B) of the form petition (Docket No. 1)) for relief, Lee leaves those lines blank. Under supporting facts, he states that he told his assigned attorneys about "the witnesses" and that the judge "saw pictures" of "the witnesses." It appears that these supporting facts are actually a continuation of the allegations from Ground One (¶22(A)).

When asked to list Ground Three (¶22(C) of the form petition (Docket No. 1)) for relief, Lee states, "There was not a unified understanding of the state finding." As supporting facts, Lee states, "The Appellate Court found it [i.e., the robbery] to be a continuous act, The trial court found it to be 'one' act. was it 'two' acts or 'one'? and because the people who worked in the store seen [sic] what happen [sic], didn't I a [sic] right to have [sic] at trial?

Respondent answered the petition, arguing that Grounds One and Two are unintelligible and do not state colorable arguments. Respondent asserts that Ground Three, which appears to be

a claim raised in the Appellate Division but not in the leave application to the Court of Appeals, is unexhausted and, in any event, not cognizable on habeas review.

Petitioner submitted a reply brief, the bulk of which is what he terms a "Hypothetical Sixth Amendment Defense." It reads as a trial transcript (albeit a fictitious one). This piece of creative writing purports to show what the witnesses mentioned in Ground One would have stated–that they knew Lee from his having come into the store before, and that he had never given them any problems. Other featured witnesses are "John Doe (1)", the meteorologist for Channel 7 news and "John Doe (2)", the City Planner for Buffalo. After the Hypothetical Sixth Amendment Defense, Petitioner contests some of Respondent's representations about inconsequential matters, e.g., the number of claims raised in the C.P.L. § 440.10 motion. Petitioner also states that his claims are exhausted and cites a number of cases in support of his petition.

The matter is fully briefed and ready for decision. For the reasons that follow, Lee's request for a writ of habeas corpus is denied and the petition is dismissed.

## III.    Discussion

### A.    Grounds One and Two: Ineffective Assistance of Counsel Based upon the Failure to Call Witnesses for the Defense

Construing Lee's allegations generously in Grounds One and Two, it appears that he is faulting all of the attorneys assigned to represent him for not procuring the witnesses (Larry Abrams, Amy King, Marie Bailey (before her decease), and John Does 1 & 2) and allegedly interviewed by the investigator Lee allegedly obtained, Frank Tobias. "[C]ounsel's decision as to 'whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily

not viewed as a lapse in professional representation.'" *United States v. Best*, 219 F.3d 192, 201
(2d Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001) (citations omitted).  Here, the claims
pertaining to the uncalled "witnesses" are based only on Lee's unsubstantiated allegations which
are based upon mere speculation, unsupported by any affidavits from these witnesses. Lee has
thus failed to demonstrate how his defense would have benefitted from the calling of these
individuals in his defense by his counsel. Because Lee has failed to demonstrate even a
possibility that the outcome of his trial would have been different, but for this omission by
counsel. Thus, he cannot establish that he was prejudiced. *See Smith v. West*, 640 F. Supp.2d 222,
233 (W.D.N.Y. 2009) (Bianchini, M.J.) ("Smith's claim rests only on speculation; he has
provided no affidavit or other basis on which to conclude that there existed a witness who could
have offered relevant and probative evidence contrary to the testimony offered by Dr. Flynn.
Thus, "the decision of trial counsel not to call an expert 'cannot be considered objectively
unreasonable'" given that Smith "'has only presented his vague hope that another expert might
have reached a different result than the government expert.'") (quoting *Savinon v. Mazucca*, No.
04CIV1589RMBGWG, 2005 WL 2548032, at *33 (S.D.N.Y. Oct. 12, 2005), *report and
recommendation adopted*, 2006 WL 2669331 (S.D.N.Y. Sept. 18, 2006) (NO. 04 CIV.
1589(RMB)(GW), *aff'd mem.*, No. 07-0940-PR, 318 Fed. Appx. 41 (2d Cir. Mar. 31, 2009)
(quoting *Leaks v. United States*, 841 F. Supp. 536, 545 (S.D.N.Y. 1994)) (footnote omitted),
*aff'd*, 47 F.3d 1157 (2d Cir.), *cert. denied*, 516 U.S. 926 (1995); and citing *United States v.
Morales*, 1 F. Supp.2d 389, 393 (S.D.N.Y. 1998) (rejecting claim that counsel was ineffective
where defendant "made no showing" that trial counsel's decision not to call "unidentified . . .
witnesses was unreasonable in light of the circumstances of th[e] case"); *Stapleton v. Greiner,*

-6-

No. 98 CV-1971 (RR), 2000 WL 1207259 at *14 (E.D.N.Y. July 10, 2000) (counsel not ineffective for failure to call an expert to authenticate potential evidence because petitioner came "forward with no affidavits or other admissible evidence indicating that any expert witness could have identified the voices or handwriting as [petitioner] proposes. Absent such evidence it is difficult to imagine any prejudice.")); *see generally Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (noting that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"). The claim stated in Grounds One and Two, based as it is on complete speculation and unsupported by any non-fictional statements by the witnesses, is patently without merit and must be dismissed.

### B.  Ground Three: Denial of the Due Process Right to a Fair Trial Based Upon the Trial Court's Determination that Petitioner's Crime Was a Continuous Course of Conduct

In Ground Three, Petitioner asserts that the trial court denied him a fair trial by finding that his crime was a continuous course of conduct and not two separate acts. Respondent argues that this claim does not present a constitutional issue cognizable in a habeas corpus petition, was not preserved for state court review and is meritless. Because the underlying issue is "easily resolvable against the habeas petitioner," *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997), the Court, in the interest of judicial economy, elects to bypass any procedural question presented by this claim.

Here, Lee was charged with one count of robbery in the third degree under a "continuing course of conduct" theory in that Lee forcibly store two separate amounts of cash from the victim, Kitchen, while he continuously threatened the victim with the use of a knife throughout the time he was with Kitchen. On direct appeal, the Appellate Division rejected Lee's

contention that he may have been convicted of an unindicted crime of robbery since his theft of money from the victim, both in the vehicle and the convenience store, "was 'part and parcel of the continuous conduct' that constituted one act of robbery[.]" *People v. Lee*, 50 A.D.3d at 1064 (quoting *People v. Afrika*, 13 A.D.3d 1218, 1221 (App. Div. 4th Dept. 2004) ("We reject the further contention of defendant in his pro se supplemental brief that he was convicted of unindicted crimes of robbery. Defendant's theft of money from the store safe and from the wallets of the two victims "was 'part and parcel of the continuous conduct'" that constituted one act of robbery.") (quotation and citations omitted)).

Based upon the allegations in Ground Three, Petitioner appears to be arguing because the trial court characterized the crime as a single act and the Appellate Division described the act as continuous, this purported disparity deprived him of a fair trial. However, as Respondent points out, the manner in which a state court defines a particular crime is a question of state law. *E.g.*, *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir.) ("What is essential to establish an element [of an offense], like the question whether a given element is necessary, is a question of state law"), *cert. denied*, 502 U.S. 915 (1991); *see also McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986) ("[I]n determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive. . . .").

The United States Supreme Court "has repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)); *see also Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010) ("[I]t is only noncompliance with federal

law that renders a State's criminal judgment susceptible to collateral attack in the federal

courts.") (citing, *inter alia*, *Estelle*, 502 U.S. at 67-68; 28 U.S.C. § 2254(a)). Consequently,

because this claim raises only a question of state law and not one of constitutional dimension, it

is not cognizable on habeas review. *See Wilson*, 502 U.S. 62, 68-70 (1991); 28 U.S.C. § 2254(a).

Even if this Court were to review the merits of the claim, the record demonstrates that

Lee possessed the same *mens rea* during the course of the entire robbery: to take money, by

force, from the victim, while Lee was in the victim's company. Furthermore, there was no

interceding event that could have caused the jury to view this as two individual robberies. The

record shows that Lee remained with Kitchen from the moment he entered the victim's truck

until both he and Kitchen left the convenience store. And, even if there had been a brief

interruption in the crime, it would not necessarily defeat a finding that the criminal acts were part

of one continuous course of conduct. *See, e.g.*, *People v. Watkins*,  300 A.D.2d 1070, 1070, 752

N.Y.S.2d 500, 501 (App. Div. 4th Dept. 2002) ("Defendant contends that the victim testified

before the grand jury and at trial that defendant committed two acts of rape, that he was indicted

for only one act of rape, and that the People failed to specify which act the rape count was

intended to encompass. We reject that contention. The victim testified before the grand jury and

at trial that defendant held a knife to her throat and forced her to enter his house. Once inside the

house, they proceeded to the kitchen and defendant removed the victim's clothes. Defendant took

the victim to another room at knife-point, and he then inserted his penis into the victim's vagina.

Defendant left the house for a period of 2 or 3 minutes and returned, again inserting his penis into

the victim's vagina. When defendant again left the house, the victim ran naked out of the house,

seeking assistance. We conclude that the briefly interrupted act of sexual intercourse was 'part

and parcel of the continuous conduct' that constituted one act of rape[.]") (internal citation omitted and quotations omitted).

IV.     **Conclusion**

For the foregoing reasons, Melvin Lee's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed. Because Lee has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/  *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      May 10, 2011
            Rochester, New York